FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 AUG -1  AM 10: 36

U.S. DISTRICT COURT
N.D. OF ALABAMA

TONYA HUTCHINSON,              ]
                               ]
   Plaintiff(s),               ]
                               ]
vs.                            ]   CV-01-N-1883-S
                               ]
MR. BURCH FORMALWEAR, INC.,    ]
                               ]
   Defendant(s).               ]

ENTERED

Memorandum of Opinion

AUG 0 1 2002

### I. Introduction

The court has for consideration the motion of defendant Mr. Burch Formalwear, Inc. (hereinafter "Mr. Burch"), for summary judgment, filed May 7, 2002. (Doc. # 33). The plaintiff, Tonya Hutchinson, brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). Mr. Burch contends that no material fact is in dispute and that judgment is due in its favor as a matter of law on her claims of race discrimination, gender and pregnancy discrimination, and retaliation. The plaintiff offers no opposition to Mr Burch's contentions on her claims of racial discrimination or retaliation, but does contend that material facts supporting her claim of pregnancy discrimination are in dispute. She maintains that summary judgment on this claim is inappropriate and matters should be submitted to the trier of fact for ultimate resolution. The issues have been briefed by the



parties and the court finds the matter now ripe for decision. Upon due consideration, the court finds the motion of the defendant due to be denied.[1]

## II.   Background

Ms. Hutchinson began her employment with the defendant as a Shirt Presser on February 22, 2000, at the defendant's "Greensprings" location. During the course of employment with the defendant, she held only the one position of Shirt Presser, and had only one supervisor, Mr. Bob Gill. Her tenure at the Greensprings location was not without problems, as the allegations in the complaint and the record of evidence developed thus far show, plaintiff was dissatisfied with numerous aspects of her job. This dissatisfaction may well have initially served as a partial basis for the commencement of this action; however, the plaintiff has abandoned these concerns in pursuit of a more substantive charge of pregnancy discrimination.

At some time during April of 2000, Ms. Hutchinson informed Mr. Gill that she was pregnant. After that time, Ms. Hutchinson made requests of Mr. Gill for both assistance and a raise. It was her belief that because she was pregnant, she needed help pressing shirts. Ms. Hutchinson had no complications with her pregnancy, however, and never received any work restrictions from her physician. Mr. Gill complied with neither request: he did not provide her with a raise, and he only provided her assistance on a few isolated occasions.

On August 22, 2000, Ms. Hutchinson was terminated. Precipitating the termination

---

[1] The court has reviewed the evidence submitted and admissions by the parties, and concludes that plaintiff rightfully concedes to defendant those claims independent of her claim of pregnancy discrimination under Title VII. Accordingly, all other claims, as set forth in Counts I and III of the complaint are due to be and hereby are dismissed.

was an August 21, 2000, doctor's appointment. On August 21, Ms. Hutchinson visited her doctor between 8:30 a.m. and 9:00 a.m. She finished some time between 11 a.m. and 11:30 a.m. The Employee Handbook provides that Shirt Pressers may not consider their shift over until they have approval of the cleaning manager or until the current day's work is completed. Often a day's work is completed soon after the noon hour. According to Ms. Hutchinson, she decided not to return to work on August 21 because she typically completed her work and was discharged for the day by 1 p.m. She did not call Mr. Gill and inform him that she would not be coming into work.

According to the defendant, Mr. Gill had discussed with her the importance of returning to work following her morning doctor's appointments, or calling in if she could not make it. As a result of her not returning to work or notifying anyone of her absence, Mr. Gill was forced to call in a manager from the downtown store to perform the plaintiff's duties. Ms. Hutchinson contends that Mr. Gill knew she was not coming in that day. During her deposition, she testified as follows: "I mean, he knew . . . he asked me two weeks before the doctor's appointment was I was (sic) coming in, and I told him no because I don't know how long my doctor's appointment is going to be." (Doc. # 42, Ex. A, p. 131).

The next day – the day of her termination – the plaintiff arrived to work late. The parties dispute the exact time: the defendant contends that the plaintiff did not arrive at work until 8:20 a.m.; the plaintiff contends that she does not remember clocking in that morning, and believes that the defendant may have clocked her in late. Nevertheless, the defendant terminated Ms. Hutchinson, informing her that her services were no longer needed. The defendant maintains that Mr. Gill and his supervisor, Mr. Michael Burch,

3

reviewed Ms. Hutchinson's employment history – including the documentation of her absenteeism and tardiness – prior to the decision to terminate her employment. Ms. Hutchinson's time sheet does note 11 tardy arrivals and seven absences in under six months. (Doc. # 35, Ex. 10). The record contains no other documentation, however, of these tardy arrivals or absences (such as notices of discipline or reprimand), beyond a single reprimand – entered on August 21 by Mr. Gill – documenting the August 21 absence, and an employee warning report terminating Ms. Hutchinson for "a history of tardiness and absenteeism." (Doc. # 35, Ex. 9, 10). Mr. Gill testified in his deposition that he believed, but could not remember, whether he had written up Ms. Hutchinson for her behavior. He also testified that he "didn't document as often as [he] should . . .," and was himself in fact reprimanded for failing to do so. (Doc. # 42, Ex. B, pp. 17). Both Mr. Gill and Mr. Burch testified at their respective depositions that it was company policy to write up employees who were tardy or absent. (Doc. # 42, Ex. B, pp. 16-17; Ex. C, pp. 27-28).

Also in dispute is the time when plaintiff was required to arrive at work. At the time she was hired, the plaintiff requested that she be allowed to arrive to work between 8:00 and 8:30 a.m. According to the defendant, she was informed that this was not acceptable, and that she would have to be at work by 7:00 a.m. just like all other pressers. The defendant maintains that the plaintiff knew that if she arrived to work after 7:00 a.m., she would be considered late. In fact, the Employee Handbook states "You are expected to report to work on time on a regular basis. Absenteeism and tardiness is expensive, disruptive and places an unfair burden on other employees. Unsatisfactory attendance will result in disciplinary action up to and including discharge." The handbook also states under

4

"Extreme Offenses. These are viewed as extremely improper conduct and are grounds for immediate termination: (O) Excessive absenteeism and tardiness." (Doc. # 35, Ex. 4).

Ms. Hutchinson admits receiving a copy of the Employee Handbook and signing a statement on March 3, 2000, admitting that she had read and understood all the policies and procedures contained therein. She contends, however, that she and the defendant reached an agreement after her hiring whereby she was permitted to come into work by 7:30 a.m. (or later if necessary) on account of her responsibilities for her children. (Doc. # 42, Ex. A, pp. 31-34, 39-41, 82-83, 92-94). She supports this allegation by pointing out that Mr. Burch had a policy whereby employees with child care or other needs could set up a system whereby a new time was set as the time after which an arrival would be considered late. (Doc. # 42, Ex. B, pp. 23-24; Ex. C, pp. 31-33).

### III. Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also DeJulio v. Georgia*, 276 F.3d 1244, 1248 (11th Cir. 2001). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Comer v. City of Palm Bay*, 265 F.3d 1186,

1192 (11th Cir. 2001); *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *see also Comer, supra*.

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the

evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150); *see also Comer*, *supra*.

### IV.   Discussion

The claim at issue here is a claim of disparate treatment in violation of Title VII, as amended by the Pregnancy Discrimination Act.

> The PDA provides that the prohibition against sex-based employment discrimination in § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), applies with equal force to discrimination on the basis of "pregnancy, childbirth, or related medical conditions." See 42 U.S.C. § 2000e(k). Further, the PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

*Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000); *see also Armstrong v. Flowers Hosp.*, 33 F.3d 1308, 1312-13 (11th Cir. 1994). As such, the court's analysis of plaintiff's claim is guided by the familiar allocation of burdens between the parties.

> A plaintiff alleging a claim of disparate treatment must establish that the employer intended to discriminate against the protected group. . . . The first step in a claim of disparate treatment, based on a theory of pretext and supported by circumstantial evidence, is for the plaintiff to establish a *prima facie* case which creates a rebuttable presumption of unlawful discrimination. The defendant may rebut this presumption, if made, by articulating a nondiscriminatory reason for its actions. To prevail, the plaintiff must show that the nondiscriminatory reason offered by the defendant is a pretext for discrimination.
>
> The elements of a plaintiff's *prima facie* case were established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and then refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Courts have modified the McDonnell Douglas/Burdine formulation as necessary to facilitate analysis in a wide range of discrimination claims. . . . [E]lements required to establish a *prima facie* case [include]: (1) the plaintiff is a member of a group protected by Title VII; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse effect on her employment; and

(4) the plaintiff suffered from differential application of work or disciplinary rules.

*Armstrong*, 33 F.3d at 1313-14 (citations and quotations omitted); *see also Lubetsky v. Applied Card Sys.*, No. 01-17203, 2002 U.S. App. LEXIS 14025, at *7-*8 (11th Cir. July 12, 2002). While the analysis applied to a pregnancy discrimination claim is generally the same as that applied to other Title VII sex discrimination suits, there one notable exception. "A plaintiff alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her." *Armindo*, 209 F.3d at 1321; *see also Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994). This exception controls the resolution of plaintiff's PDA claim.

The defendant maintains that the plaintiff cannot prove the fourth prong of this test – presumably recognizing, as does the court, that the first three prongs are satisfied. The defendant contends that the plaintiff has come forward with no evidence demonstrating instances where the defendant treated non-pregnant employees differently than it treated pregnant employees. According to the defendant, the plaintiff violated defendant's attendance and tardiness policies, and was rightfully terminated.

The problem with this argument lies in the evidence that quite clearly shows a failure by the defendant to adhere to its own policy. As noted *supra*, the defendant did not issue any written warnings to the plaintiff prior to the reprimand issued on August 21, despite company policy requiring as much. That plaintiff has come forward with no evidence of other employees being treated differently than her is irrelevant, as the law applicable to Title VII/PDA claims relieves her of this burden. *See Armindo*, 209 F.3d at 1321; *Byrd*, 30

F.3d at 1383. The facts, viewed in a light most favorable to the non-movant, show that the defendant tolerated behavior that likely violated the written workplace attendance policy, but may or may not have violated an unwritten agreement reached between the plaintiff and her managers. More importantly, the facts show that whatever plaintiff's behavior, none of plaintiff's superiors followed company procedure in documenting the problems they purportedly had with her workplace attendance behavior – behavior ultimately offered as the reason for her termination. The questions of fact underlying these conclusions compel the court to find that Ms. Hutchinson has established a prima facie case of discrimination.

For similar reasons, the court finds the evidence in the record sufficient to raise questions of fact as to whether the defendant's proffered non-discriminatory reasons are pretexts for discrimination. Although the court acknowledges that Ms. Hutchinson's deposition testimony is not the model of internal consistency with respect to the alleged attendance agreement she had with Messrs. Gill and Burch, the record is clear that Ms. Hutchinson was both late and absent on numerous occasions prior to the day she was terminated. For whatever reason, these late arrivals and absences generated no response from the defendant: the plaintiff was not disciplined, counseled, or terminated. The events of August 21 may well have been the proverbial straw that broke the camel's back. But in the absence of any adherence by the defendant to its own policy, the court lacks a sufficient basis upon which to conclude that the defendant's actions were free of discriminatory taint. The defendant's motion for summary judgment is due to be denied.

## V.  Conclusion

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __31st__ of July, 2002.

_____

EDWIN L. NELSON

UNITED STATES DISTRICT JUDGE

10